## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**DEMETRIOUS WELLS,**                                    :

          **Plaintiff**           :        **CIVIL ACTION NO. 3:16-0842**

    **v.**                                        :              **(JUDGE MANNION)**

**JOHN WETZEL,** *et al.*,                          :

          **Defendants**        :


## <u>MEMORANDUM</u>

### I. <u>Background</u>

Plaintiff, an inmate confined in the State Correctional Institution, Huntingdon, ("SCI-Huntingdon") Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). On April 21, 2017, Plaintiff filed an amended complaint. (Doc. 20). Plaintiff names as Defendants John Wetzel, Department of Corrections Secretary and the following SCI-Huntingdon employees: Superintendent Tabb Bickell; Deputy Superintendent of Facility Management J. Eckard; Deputy Superintendent of Centralized Services M.C. Garman; Unit Manager B. Hollibaugh; and Captain John Doe. <u>Id</u>.

Plaintiff alleges he was assigned to the Restricted Housing Unit (RHU) at SCI Huntingdon on June 18, 2009, because he had a pending capital case. (Doc. 20, amended complaint).

Plaintiff states that he met with Defendants Eckard, Garman, and/or Hollibaugh who were members of the Program Review Committee (PRC) but they continually denied his release from the RHU because of his pending capital case. Id. Plaintiff was released into general population on October 15, 2014, when the death penalty was removed from his criminal case. Id. Plaintiff alleges his confinement in the RHU from June 2009 through October 2014 violated his rights under the Eighth and Fourteenth Amendments. Id. For relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory relief "declar[ing] unconstitutional and unlawful defendants' actions in depriving plaintiff of his rights to be free from cruel and unusual punishment when forcing plaintiff to Administrative Custody from June 2009 through October 2014 without a compelling justification and/or factual supporting evidence to sustain plaintiff's confinement." Id.

By Memorandum and Order dated March 28, 2019, this Court denied Defendants' motion to dismiss, finding that Plaintiff's submissions created a sustainable question of fact as to whether Plaintiff's placement in the RHU pursuant to DC-ADM 802 was appropriate in the first instance. (Docs. 48, 49)

- 2 -

Presently before the Court is Defendants' motion for summary judgment. (Doc. 69). The motion is fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## II. **Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at

257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of

proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v.

- 5 -

Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006)

(*pro se* parties must follow the Federal Rules of Civil Procedure).

III.    **Statement of Undisputed Facts**[1]

The Philadelphia District Attorney's Office charged the Plaintiff with first degree murder, noting at the time that the Plaintiff had previously been convicted of another murder and of voluntary manslaughter, both of which made him eligible for the death penalty. (Doc. 71-1 at 2, Criminal Information; see also 18 Pa. Con. Stat. §9711(d)(11) and (12). Under former DC-ADM 802, an inmate who had a pending capital case (one where the prosecution

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party]...as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. 71). Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1. Thus, the Court deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

is seeking the death penalty) was to be housed in Administrative Custody, Level 5 Status. (Doc. 31-2 at 6, former DC-ADM 802, Section 1(A)(1)(i)).

On April 1, 2014, Plaintiff's case was re-designated as non-capital. (Doc. 71-2 at 2). The Plaintiff was removed from Administrative Custody, Level 5 Status, on October 15, 2014. (Doc. 20 at 12).

During Plaintiff's confinement in Administrative Custody, Plaintiff had "periodic time and/or monthly appearances before PRC" and "conducted extensive interviews with Plaintiff" to assess Plaintiff's situation and determine if he should be released to general population. (Doc. 20 at 7).

## IV.  <u>Discussion</u>

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  <u>See</u> 42 U.S.C. §1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

<u>Id</u>.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state

actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).   To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### A. Eleventh Amendment Immunity

It is well settled that suits for damages by individuals against, inter alia, state officers acting in their official capacities are barred by the Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985) (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Chittister v. Dep't of Community and Economic Development, 226 F.3d 223 (3d Cir. 2000) (holding that individuals are barred from seeking monetary damages from state governments or state agencies). See also Bey v. Pennsylvania Department of Corrections, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000) wherein the court summarized well-established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of
> the United States shall not be construed to extend to any suit in

law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

Id.; see also Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

Thus, Defendants are entitled to judgment as a matter of law on Plaintiff's claims for monetary damages against the Defendants in their official capacities.

## B. **Personal Involvement**

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of respondeat superior. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a §1983 case and that a complaint must allege such personal involvement. Id. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims

are based. Id. As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs .... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

See also Fisher v. Matthews, 792 F.Supp.2d 745 (M.D.Pa. 2011) (citing Rode, supra). Furthermore, merely responding to a prisoner's grievances is insufficient to establish personal involvement. See Alexander v. Gennarini, 144 F. App'x.924 (3d Cir. 2005); see also Brooks v. Beard,167 F.App'x. 923, 925 (3d Cir. 2006) (noting that a claim of inappropriate response to an inmate's grievances does not establish "personal involvement on the part of . . . prison officials and administrators[]").

Here, the Plaintiff's sole mention of Defendant Bickell in the amended complaint is that Defendant Bickell reviewed an appeal of the PRC's decision to not release the Plaintiff from administrative custody. (Doc. 20 at 9-10), ¶¶ 21-23. This after-the-fact review of other individuals' decisions does not establish Defendant Bickell's personal involvement, so he is entitled to summary judgment in his favor. Mitchell v. Dodrill, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010) (holding that officials' handling of prison grievance procedures does not equate to personal liability in a civil rights claim).

Likewise, Defendant Wetzel was only involved by reviewing a subsequent appeal filed by the Plaintiff, which is also insufficient to establish his personal involvement. (Doc. 20 at 10-11. Moreover, to the extent that Plaintiff claims that Defendant Wetzel "Has the overall supervisory and responsibility to the general control of the Pennsylvania Correctional Facilities, including 'SCI-Huntingdon,'" such claims amount to nothing more than an attempt to impose supervisory liability on Defendant Wetzel, which does not rise to the level of personal involvement. See Rizzo, supra.

Based upon an application of the above standards, Plaintiff has failed to satisfy the personal involvement requirement standard of Rode with respect to Defendants Bickell and Wetzel, and they are entitled to summary judgment.

### C.  **Eighth Amendment – Cruel and Unusual Punishment**

Plaintiff claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated by his continued placement in administrative custody from June 2009 through October 2014. Defendants argue that Plaintiff's claim is not cognizable because, *inter alia*, he has failed to show a serious deprivation. The Court agrees.

In order to state an Eighth Amendment claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities"

and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, (1994). To violate the Eighth Amendment's prohibition of cruel and unusual punishment, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1,8–9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions—considered alone constitutionally insufficient—may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise...." See Wilson v. Seiter, 501 U.S. 294, 304 (1991).

In applying this test, the Court acknowledges that "[t]he Constitution ... does not mandate comfortable prisons." Wilson, 501 U.S. at 298. " '[S]egregated confinement in solitary or maximum security is not *per se* banned by the Eighth Amendment.' " Clifton v. Robinson, 500 F.Supp. 30, 34 (E.D. Pa. 1980), quoting Burns v. Swenson, 430 F.2d 771, 777 (8th Cir.

1979). Moreover, "the indefinite duration of the inmates' segregation does not render it unconstitutional." In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999). The length of time that a prisoner must go without benefits is "simply one consideration among many" in the Eighth Amendment inquiry. Hutto v. Finney, 437 U.S. 678, 687 (1978).

Here, Plaintiff complains that "[d]uring his unjustified confinement in the 'RHU', plaintiff was not entitled to full access to the institution's commissary, showers, exercise, telephone, recreation and educational programs." (Doc. 20 at 6). While Plaintiff complains of not being "entitled to full access", he does not claim to have been completely denied access to any of these amenities.

Nonetheless, the Court has recognized that "'isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [solitary] confinement unconstitutional absent other illegitimate deprivations.'" Washington-El v. Beard, 2010 WL 6065083, at *11 (W.D. Pa. Dec. 16, 2010), quoting, Five Percenters, 174 F.3d at 472 (4th Cir. 1999) (quoting Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854, 861

(4th Cir. 1975) (en banc)).[2] Because Plaintiff's Eighth Amendment claim regarding the conditions of his solitary confinement fails to identify any "illegitimate" deprivation of a constitutional right, Defendants are entitled to judgment on this claim.

### D.  Fourteenth Amendment Due Process

To establish a Due Process claim under the Fourteenth Amendment, Plaintiff must first demonstrate the existence of a constitutionally protected liberty or property interest impaired by Defendants' actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process. Alvin v. Suzuki, 227 F.3d 101, 116 (3d Cir. 2000). However, if the court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Morrissey, 408 U.S. at 481.

In response to Plaintiff's due process challenge, Defendants argue that no due process rights were violated because no liberty interest was at stake.

---

[2] In support of his claim, Plaintiff cites a case in which the courts have upheld Eighth Amendment claims involving nearly identical allegations by a prisoner subjected to long-term solitary confinement; however, the period of confinement at issue in that case was considerably longer than the time period at issue here and, thus, makes that case markedly distinguishable from the present case. See, Shoatz v. Wetzel, 2016 WL 595337 (W.D. Pa. Feb. 12, 2016) (22 consecutive years of solitary confinement).

Specifically, Defendants point out that long periods of confinement under highly restrictive conditions have been held insufficient to trigger the protections of the Due Process Clause, citing, inter alia, Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (fifteen months in administrative custody), and Diaz v. Canino, 502 Fed. Appx. 213 (3d Cir. 2012) (360 days of disciplinary custody did not implicate a liberty interest). Additionally, Defendants note that the Supreme Court held in Sandin v. Conner, 515 U.S. 472 (1995), that "discipline in segregated confinement d[oes] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. In reaching this conclusion, however, the Sandin court "did not pronounce a per se rule." Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003).

"In deciding whether a protected liberty interest exists under Sandin, we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." Mitchell, 318 F.3d at 531-32, citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000). In applying these factors, the Third Circuit has reached differing conclusions, "reflecting the fact-specific nature of the Sandin test." Mitchell, 318 F.3d at 532, comparing, inter alia, Shoats, 213 F.3d at 144 (eight years in administrative confinement, during which inmate was locked in his cell for all

but two hours per week, denied contact with his family, and prohibited him from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest), with Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(seven months of disciplinary confinement did not implicate a liberty interest), and Griffin v. Vaughn, 112 F.3d 703, 706-09 (3d Cir. 1997) (administrative custody for a period of fifteen months with strict limits on property, visitation, and out-of-cell activities did not implicate inmate's due process rights).

Here, at the time this lawsuit was filed, Plaintiff had remained in solitary confinement for a period of five years. During this time, the record suggests that Plaintiff has been exposed to conditions comparable to those experienced by the plaintiff in Shoats, which were found to have imposed significant hardship in relation to the ordinary incidents of prison life. Accordingly, Plaintiff has sufficiently demonstrated that he "has a protected liberty interest that has been adversely affected by his indefinite segregation in administrative custody." Shoats, 213 F.3d at 144.

Nonetheless, Defendants argue that Plaintiff has been afforded all of the process that he is due. Specifically, Defendants assert that Plaintiff, himself, admits to having received the requisite periodic reviews by the PRC, which is all the process that is required. See Washington-El, 2013 WL

1314528, at *9, citing Bowen v. Ryan, 248 Fed. Appx. 302, 304-05 (3d Cir. 2007) (finding that, even though 20 years of administrative custody implicated a liberty interest, "the procedures provided by the Pennsylvania Department of Corrections satisfy the minimal standards for due process"). See also Delker v. McCullough, 103 Fed. Appx. 694 (3d Cir. 2004) (holding that the DOC's periodic reviews of status provided inmate due process to which he was entitled for continuing placement in administrative confinement), citing Shoats, 213 F.3d at 147 (holding that periodic reviews by the PRC comport with minimum constitutional standards for due process). While Plaintiff disputes the efficacy of the PRC reviews, particularly regarding his continued placement on administrative custody, Plaintiff acknowledges having received the periodic reviews to which he is due. (Doc. 20 at 7-11). Thus, his procedural due process claim is without merit and Defendants are entitled to judgment.

Finally, to the extent Plaintiff is attempting to assert a substantive due process claim, he must prove that he was "deprived of a protected property interest by arbitrary or capricious government action." Shoatz v. Wetzel, 2016 WL 595337, at *9 (W.D. Pa. Feb. 12, 2016), citing Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998). This he cannot do, as the record demonstrates that he was placed in administrative custody, albeit

- 17 -

unfortunately, pursuant to former DC-ADM 802, which, at the time, mandated administrative custody for inmates with a pending capital case. Thus, his substantive due process claim is meritless.

### E. Fourteenth Amendment Equal Protection

Plaintiff claims that "Defendants' action in depriving Plaintiff of rights not to be treated differently by a state actor without a compelling justification and timely notice violated Plaintiff's rights guaranteed by the Fourteenth Amendment." (Doc. 20 at 13). In so doing, Plaintiff essentially asserts a Fourteenth Amendment equal protection claim, invoking the "class of one" theory announced by the Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562 (2000). According to the "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006), citing Olech, 528 U.S. at 564.

Plaintiff, however, has failed to show a lack of rational basis for his removal from general population. The burden is upon the Plaintiff to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 367 (2001), quoting Heller v. Doe, 509 U.S. 312, 320 (1993);

Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir. 2002). Here, the record demonstrates that Plaintiff was removed from general population and placed in administrative custody pursuant to DC-ADM 802, which mandated administrative custody for inmates with a pending capital case. Thus, Plaintiff is unable to negate the rational basis given for his placement in administrative custody and his equal protection claim should be dismissed accordingly.

### F. Injunctive/Declaratory Relief

It is well recognized that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." Steffel v. Thompson, 415 U.S. 452, 459 (1974). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at 459 n. 10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F.Supp. 1451, 1462 (S.D.N.Y.1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). A prisoner's transfer or release from prison moots his claims for injunctive or declaratory relief since he is no longer subject to the conditions he alleges are unconstitutional. Abdul-Akbar v. Watson, 4 F.3d 195, 206-207 (3d

Cir.1993); see also Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir.1981) ("[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge.").

In the case sub judice, it is apparent that Plaintiff made a request that this Court "declare unconstitutional and unlawful defendants [sic] actions in depriving plaintiff of his rights to be free from cruel and unusual punishment when forcing plaintiff to administrative custody from June 2009 through October 2014 without a compelling justification and/or factual supporting evidence to sustain Plaintiff's confinement." (Doc. 20 at 14). The record before the Court demonstrates that Plaintiff was subsequently transferred out of administrative custody.

In light of these circumstances, there is nothing in the record to suggest that there exists a reasonable probability of Plaintiff's return to administrative custody in the foreseeable future. Consequently, Plaintiff's claim for injunctive relief is moot and will be dismissed. See Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa.1998) ("Fortes' transfer to another institution moots any claims for injunctive or declaratory relief.").

## VI. <u>Conclusion</u>

Based upon the undisputed facts of record, Defendants' motion for summary judgment will be granted.

An appropriate order shall issue.


_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**


**Dated: March 30, 2021**

16-0842-02